IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS COVIELLO, | : | |
| | : | |
| Plaintiff | : | No. 1:15-cv-1812 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| THE BERKELEY PUBLISHING | : | (Chief Magistrate Judge Schwab) |
| GROUP, et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is Defendants' motion for partial reconsideration or, in the alternative, to dismiss for fraud on the court. (Doc. No. 116.) For the reasons provided herein, the Court will deny the Defendants' motion.

I. BACKGROUND

Plaintiff filed a complaint on September 17, 2015 (Doc. No. 1), asserting various state law claims sounding in defamation, invasion of privacy, and intentional infliction of emotional distress arising out of Defendants' publication of a book, THE QUIET DON, that contained a series of letters purportedly sent by Plaintiff Louis Coviello to government officials revealing that he acted as an informant against the alleged leader of a local Mafia family. (Doc. No. 1 at 3-6.) On December 11, 2015, Defendants moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 10). On March 16, 2016, Magistrate Judge Schwab granted Plaintiff leave to file an amended complaint, which set forth claims under 42 U.S.C. § 1983 in addition to the previously alleged state law claims, and denied Defendants' motion to dismiss as moot. (Doc. Nos. 29, 30.) On March 30, 2016, Defendants filed a motion to dismiss the amended complaint, or in the alternative, for summary judgement.

1

(Doc. No. 33.) Plaintiff filed a motion for leave to file a second amended complaint adding a new defendant on May 25, 2016 (Doc. No. 63), which was denied on November 11, 2016. (Doc. No. 96.)

On January 19, 2017, Magistrate Judge Schwab entered a Report and Recommendation, wherein she recommended that the Court grant Defendants' motion to dismiss, or in the alternative, for summary judgment, on the basis that the statute of limitations had expired as to the asserted state law claims, and the amended complaint contained insufficient factual averments to support a plausible inference that the private actors named as Defendants conspired with the state through concerted action as required to maintain a viable a Section 1983 cause of action. (Doc. No. 106). On March 6, 2017, this Court adopted, over Plaintiff's objections, Magistrate Judge Schwab's Report and Recommendation. (Doc. No. 115.) However, observing that the Report and Recommendation made no explicit futility finding as to Plaintiff's Section 1983 claims, the Court afforded Plaintiff a final opportunity to amend his pleading to assert a cause of action under Section 1983 against the above-captioned Defendants. (Id.) On March 20, 2017, Defendants moved for partial reconsideration of the Court's Order adopting Magistrate Judge Schwab's Report and Recommendation, requesting that the Court reconsider allowing Plaintiff leave to amend his Section 1983 claims.

In this pending motion, Defendants explain that they printed a series of letters sent by Plaintiff to a third-party businessman named Matzel in THE QUIET DON. (Sproul Dec. Doc. No. 39 Ex. A at 183-188; Doc. No. 55 at 2.) In the Matzel letter at issue in this litigation, dated April 11, 2007, Plaintiff disclosed that he spoke to various Gaming Control Board officials and field agents regarding allegations of corruption involving the recipient of a slots license, Louis DeNaples. (Doc No. 39 Sproul Dec. Ex. A at 185-188.) Defendants assert that they published

this letter verbatim in THE QUIET DON, but omitted a paragraph containing an unverified allegation that was deleted for liability reasons. (Doc. No. 117 at 4.) Defendants further indicate that on February 16, 2017, prior to the Court's adoption of the Report and Recommendation, they received correspondence from Plaintiff regarding the April 11, 2017 Matzel letter. (Doc. No. 117 at 3.) Specifically, Defendants aver that Plaintiff sent a copy of the original April 11, 2017 Matzel letter containing the deleted paragraph together with a note admonishing Defendants for "telling lies" about him, in an attempt to extract a settlement from Defendants. (Doc. No. 116 Ex. A.) Defendants contend that this correspondence constitutes new evidence that demonstrates that Plaintiff wrote and retained the letter, thus undermining his claims that the Matzel letter was fabricated. (Doc. No. 117 at 4.) Thus, Defendants move the Court to reconsider its Order granting Plaintiff leave to amend on the basis that any attempt to amend Plaintiff's Section 1983 claims would be futile. (Doc. No. 115.) Alternatively, Defendants move to dismiss the action for fraud on the Court.[1] (Id.)

## II.     DISCUSSION

### A.     Motion for Partial Reconsideration

---

[1] The Court notes following the Court's adoption of Magistrate Judge Schwab's Report and Recommendation, Plaintiff filed an appeal that is currently pending before the United States Court of Appeals for the Third Circuit. (Doc. Nos. 118, 123.) Plaintiff's premature appeal of the Court's Order, however, does not divest this Court of jurisdiction over Defendants' motion for reconsideration. Bensalem Twp. v. Intl. Surplus Lines Ins. Co., 38 F.3d 1303, 1315 (3d Cir. 1994) (quoting Mondrow v. Fountain House, 867 F.2d 798, 799 (3d Cir. 1989) (holding that a "premature notice of appeal does not divest the district court of jurisdiction")). Indeed, the Third Circuit has "adhered consistently to the general rule that [it] lack[s] appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed without prejudice." Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 438 (3d Cir. 2003) (citation omitted). Accordingly, because the Court dismissed Plaintiff's Section 1983 without prejudice, his notice of appeal is procedurally defective, and this Court consequently retains jurisdiction over the present action.

3

A motion for reconsideration is a device of limited utility, which may "not be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citations omitted); see Baker v. Astrue, No. CIV. A. 07-4560, 2008 WL 4922015, at *1 (E.D. Pa. Nov. 17, 2008). Indeed, a court may relieve a party from an order only upon a showing from the movant of one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). "Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted sparingly." Interfaith Cmty. Org., v. PPG, 702 F. Supp. 2d 295, 317 (D.N.J. 2010) (internal quotation marks and citation omitted); see also Geiger v. Town of Greece, et al., No. 07-CV-6966 CJS, 2007 WL 4244174, at *4 (W.D.N.Y. Nov. 2, 2007) ("[The] rules are narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court.") (quotation marks and citation omitted). Relevant here, in order "to permit reconsideration when new evidence becomes available, the moving party must present new evidence that would alter the disposition of the case." Interfaith Cmty. Org., 702 F. Supp. 2d at 317 (citation omitted). Furthermore, the burden is on the moving party to establish that the evidence was unknown prior to the Court's ruling. See id.

Applying the three narrowly-defined factors governing motions for reconsideration here, the Court finds that Defendants have failed to make the requisite showing as to any of the grounds for altering or amending its Order granting Plaintiff leave to amend his Section 1983

4

claims in conjunction with its adoption of Magistrate Judge Schwab's Report and Reccomendation. Defendants assert that they are entitled to reconsideration of the Court's Order because they possess new evidence in the form of correspondence between Plaintiff and Defendants that "unequivocally demonstrates that [P]laintiff has based this litigation on a falsehood." (Doc. No. 117 at 2.) However, the Court is hard pressed to discern how this correspondence constitutes "newly discovered evidence" that would compel the Court to reconsider its Order granting Plaintiff a final opportunity to amend his Section 1983 claims. See Interfaith, 702 F. Supp. 2d at 317 (citation omitted). A review of Defendants' brief in support of their motion for reconsideration reveals that the Matzel letter is not new evidence; by Defendants' own admission, they were in possession of the original April 11, 2007 Matzel letter long before Plaintiff sent a copy on February 16, 2017. (See Doc. Nos. 34 at 1-2; 117 at 4.) Indeed, Defendants published THE QUIET DON in 2013 (Sproul Dec. Doc. No. 10 Ex. B), and Defendants submitted a copy of the letter printed in the book as an exhibit to their motion to dismiss. (Sproul Dec. Doc. No. 10 Ex. A.) While Plaintiff's February 16, 2017 correspondence may very well contradict his claims that the Matzel letter was fabricated (Doc. No 30 at 7), it does not equate to a new discovery, as Defendants received this correspondence prior to the Court's adoption of Magistrate Judge Schwab's Report and Recommendation. Interfaith, 702 F. Supp. 2d at 317 (citation omitted); Blystone v. Horn, 664 F.3d 397, 415-16 (3d. Cir. 2011) ("We have made clear that new evidence, for reconsideration purposes, does not refer to evidence that a party . . . submits to the court after an adverse ruling. Rather, new evidence . . . means evidence that a party could not earlier submit . . . because that evidence was not previously available.")

      Furthermore, Defendants do little in the way of explaining why the correspondence presents additional information material to the issue of whether Plaintiff should be given leave to

amend. (Doc No. 117); see Interfaith, 702 F. Supp. 2d at 318; see Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California, 649 F. Supp. 2d 1063, 1072 (E.D. Ca. 2009) (finding a letter submitted as newly discovered evidence on a motion for reconsideration to be inadmissible on grounds that the "evidence [was] not of a material and controlling nature that would demand a probable change in the outcome"). Defendants do not resolve for the Court why the correspondence (Sproul Dec. Doc. No. 116 Ex. A), undermines the entirety of Plaintiff's assertions that there was a conspiracy between state and private actors to deprive him of his constitutional rights through identifying him as an informant in the publication, which was later disclosed to other inmates, placing Plaintiff at risk of assault, and thereby renders any amendment to Plaintiff's improperly pled Section 1983 claims futile at this stage in the litigation. (Doc. No. 30 at 21.) For an amendment to be futile, it must fail to state a claim upon which relief could be granted. See Buxton v. Hill, No. 2:15-CV-00646, 2016 WL 4269870, at *2 (W.D. Pa. Aug. 15, 2016). While Plaintiff's production of the Matzel letter suggests that Plaintiff informed officials of instances of corruption, thereby contradicting his claims that Defendants falsely labeled him an informant (Sproul Dec. Doc. No. 116 Ex. A; Doc. No. 117 at 4-5), the fact remains that Plaintiff also alleges, albeit inadequately, that Defendants' exposure of him as an informant caused a violation of his constitutional rights.[2] (Doc. No. 30 at 1-2, 21.) Thus, even if the correspondence does constitute new evidence, the Court is unable to conclude

---

[2] Specifically, Plaintiff alleges as follows: ". . . The Court's original jurisdiction of all civil actions raising a federal question arising under . . . the Civil Rights Act, 42 U.S.C. § 1983, alleging, inter alia, that the defendant conspired and agreed with employees of the State of Pennsylvania to violate the Civil Rights of Louis Coviello, did in fact violate his Civil Rights, acting in concert with employees of the State of Pennsylvania, caused Louis Coviello to be denied Due Process of Law and Equal Protection of the Laws and subjected to Cruel and Unusual Punishments in violation of the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States." (Doc. No. 30 at 1-2.)

at this stage of the proceedings that such correspondence is material to the disposition of Plaintiff's deficient Section 1983 claims.[3] See Interfaith 702 F. Supp. 2d at 318; Legal Asset Funding LLC v. Veneski, No. 3:04-CV-01156, 2006 WL 3759719, at *2 (M.D. Pa. Nov. 29, 2006) ("When new evidence is irrelevant to the claims at issue, the moving party is not entitled to reconsideration.") Accordingly, for the foregoing reasons, the Court will deny Defendants' request for reconsideration of its Order permitting Plaintiff leave to amend his Section 1983 claims.

### B. Motion to Dismiss for Fraud on the Court

Defendants have alternatively moved for the Court to impose a sanction of dismissal of this action on the basis that Plaintiff has committed fraud on the Court, as evidenced by the Matzel letter. (Doc. No. 116).

"Courts have an inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Derzack v. Cty. of Allegheny, 173 F.R.D. 400, 413 (W.D. Pa. 1996) (citation omitted); Stafford v. Derose, No. 3:09-CV-00246, 2015 WL 1499833, at *2 (M.D. Pa. April 1, 2015) ("[I]t is clearly settled that a district court may dismiss a suit outright in response to litigation abuses.")). Dismissal is an extreme sanction that deprives a litigant of their day in court. Id. at *3. For this reason, "a court should not resort to such sanctions unless the conduct of the party or attorney is

---

[3] The Court notes that, to the extent that Plaintiff's correspondence with Defendants, or the authenticity of the Matzel letter, are material to the disposition of his forthcoming amended Section 1983 claims, Defendants' arguments advanced in connection with their motion for reconsideration are more properly considered in the context of a motion for summary judgment. Whereas "the scope of a motion for reconsideration is . . . extremely limited," a motion for summary judgment shifts the burden to the "nonmoving party to go beyond the mere pleadings and represent evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial." Blystone v. Horn, 664 F.3d 397, 410 (3d. Cir. 2011); Syncor Intern. Corp. v. Mody, No. CIV. A. 98-6284, 1999 WL 257758, at *2 (E.D. Pa. Apr. 29, 1999).

egregious and no other basis for sanctions exists.  E.E.O.C. v. U.S. Steel Corp., 877 F.Supp. 2d 278, 288 (W.D. Pa. 2012) (quotation marks and citations omitted); see Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 (3d Cir. 1994).

In Republic of Phillipines v. Westinghouse Electric Corp., 43 F.3d 65 (3d Cir. 1994), the Third Circuit articulated a two-step analytic framework governing a district court's imposition of sanctions pursuant to both the Federal Rules of Civil Procedure and its inherent power.  First, "the court must consider the conduct at issue and explain why the conduct warrants sanction," taking into account any aggravating or mitigating factors that would impact the severity of the sanction.  Id. at 74.  Second, the court must "specifically consider the range of permissible sanctions" and "explain why less severe alternatives to the sanction imposed are inadequate or inappropriate" as well as why "it has chosen any particular sanction from the range of alternatives it has identified."  Id. (citing Poulis, 747 F.2d at 868).  Critically, the court must "ensure that there is an actual factual predicate for flexing its substantial muscle" in imposing sanctions, such as a finding of bad faith.  Id.; E.E.O.C., 877 F. Supp. 2d 278 at 288 ("[A] finding of bad faith is usually required before inherent-power sanctions are ordered . . . .").

Here, Defendants argue that they are entitled to dismissal because Plaintiff has committed fraud on the Court by sending a correspondence that contradicts the assertions made in his complaint. (Doc. No. 117 at 9-10.)  However, given the Court's finding that the correspondence (Sproul Dec. Doc. No. 116 Ex. A), is factually insufficient to warrant reconsideration of its Order adopting Magistrate Judge Schwab's Report and Recommendations, it follows that the correspondence, standing alone, is not clear and convincing proof that Plaintiff committed fraud on the Court.  In sum, there is simply not enough evidence on the record proving Plaintiff misled the Court to justify the application of the extreme sanction of dismissal.

8

**III.     CONCLUSION**

For the foregoing reasons, the Defendants' motion for partial reconsideration, or in the alternative, to dismiss based on fraud on the court (Doc. No. 116), is denied.  An Order consistent with this Memorandum follows.